IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

GREEN VALLEY SPECIAL UTILITY
DISTRICT,
              Plaintiff,
-vs-

DEANN T. WALKER, ARTHUR C.
D'ANDREA, and SHELLY BOTKIN, in
their official capacities as Commissioners of
the Public Utility Commission of Texas;
JOHN PAUL URBAN, in his official
capacity as Executive Director of the Public
Utility Commission of Texas; CITY OF
SCHERTZ, TEXAS; JOHN KESSEL, in his
official capacity as City Manager of the City
of Schertz, Texas; and GUADALUPE
VALLEY DEVELOPMENT
CORPORATION,
              Defendant.

CAUSE NO.:
AU-17-CA-00819-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Green Valley Special Utility District (Green Valley)'s Motion for Summary Judgment [#100]; Defendant Guadalupe Valley Development Corporation (GVDC)'s Response [#102] in opposition; Defendants Deann T. Walker, Arthur C. D'Andrea, Shelly Botkin, and John Paul Urban, in their capacity as officials of the Public Utility Commission of Texas (collectively, the PUC)'s Response [#103] in opposition; Defendants Brian James, in his official capacity as City Manager of the City of Schertz, and the City of Schertz (collectively, Schertz)'s Response [#104] in opposition; and Green Valley's Reply [#115] in support; as well as Schertz's Motion for Summary Judgment [#106]; GVDC's Motion for Summary Judgment

1

[#120]; the PUC's Motion for Summary Judgment [#121]; Green Valley's Responses [#122] thereto; and GVDC's Reply [#123] in support. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

## Background

### I. Introduction

This is a federal preemption case. Green Valley is a special utility district formed to provide water and sewer service to portions of Bexar, Comal, and Guadalupe Counties. Green Valley Mot. Summ. J. [#100-2] Ex. 1A (Water CCN) at 1; *id.* [#100-2] Ex. 1B (Sewer CCN) at 2.[1] Towards this end, Green Valley has acquired two Certificates of Convenience and Necessity (CCNs)—issued by the PUC—which give Green Valley an exclusive right to provide water and sewer service to a designated service area within these counties. Water CCN; Sewer CCN.

In part, Green Valley has funded its operations with a federal loan obtained under 7 U.S.C. § 1926. Green Valley Mot. Summ. J. [#100-2] Ex. 1C at 3–75. Section 1926(b) provides that, during the term of this loan, "the service provided or made available" by utility associations such as Green Valley "shall not be curtailed or limited by inclusion of the area served . . . within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area." 7 U.S.C. § 1926(b).

### II. The Schertz Decertification Application

In October 2014, Schertz notified Green Valley that it intended to provide sewer service to approximately 405 acres of land within Schertz's corporate limits but encompassed by Green Valley's Sewer CCN (the Schertz Acreage). Green Valley Mot. Summ. J. [#100-7] Ex. 2J (Schertz Decertification Order) at 28. Schertz then filed an application under Texas Water Code § 13.255(b) requesting the PUC decertify this acreage from Green Valley's Sewer CCN and

---

[1] In the interest of consistency all page number citations refer to CM/ECF pagination.

recertify the same acreage to Schertz. *Id.* at 29. Section 13.255(b) allows municipalities to apply for certification to provide water or sewer service to areas falling within the municipalities' corporate limits. TEX. WATER CODE § 13.255(b). PUC officials lack discretion to deny applications sought under § 13.255 because § 13.255 states the PUC "*shall* grant single certification to the municipality" upon receipt of an application. *Id* § 13.255(c). Relying on this statutory language, the PUC concluded it must grant Schertz's application.[2] Schertz Decertification Order at 37. The PUC then decertified the acreage in question from Green Valley's Sewer CCN and recertified the acreage to Schertz. *Id.* at 40. The practical effect of this maneuver was to revoke Green Valley's exclusive right to provide sewer service to the Schertz Acreage.

### III. The GVDC Decertification Petition

GVDC owns a tract of land (the GVDC Tract) within Green Valley's service area. Green Valley Mot. Summ. J. [#100-7] Ex. 2H (GVDC Decertification Order) at 9, 12. In October 2014, GVDC informed Green Valley that it planned to begin development on this Tract and would require water and sewer service as its development progressed.[3] GVDC Resp. [#102-1] Ex. 1 (GVDC Service Request) at 1–18. GVDC further requested that Green Valley produce "a definitive commitment and agreement" by September 28, 2015 regarding the provision of sewer service. *Id.* [#102-1] Ex. 2 (GVDC Commitment Demand) at 19–20.

In response, Green Valley informed GVDC that Green Valley was "committed to serving [customers] within its CCNs" and had recently taken several steps to facilitate the provision of

---

[2] Schertz has at times suggested the PUC granted Schertz's application for decertification under § 13.254(a), rather than under § 13.255. *See* Schertz Mot. Summ. J. [#106] at 7, 10. This suggestion appears to be in error, as the Schertz Decertification Order relies solely on § 13.255. Schertz Decertification Order at 24, 37 ("The Commission must grant single certification to the municipality under [§ 13.255(c)].").

[3] Green Valley contends the GVDC Tract was entirely undeveloped when GVDC requested service in October 2014. *See* Green Valley Reply [#115] at 3 (alleging the GVDC property is "dry cropland" with "no building or infrastructure").

3

wastewater services, such as purchasing 65 acres of land for construction of a wastewater treatment facility and applying for a discharge permit[4] in order to provide service to GVDC on an "expedited basis." *Id.* [#102-1] Ex. 3 (Green Valley Commitment) at 21–23. Green Valley further explained there were currently no wastewater facilities near the GVDC Tract because "sparse development" within Green Valley's Sewer CCN had historically rendered the construction of such facilities impractical. *Id.* at 21–22.[5] As development of the area accelerated, however, Green Valley aimed to construct "a permanent facility . . . to serve current and future growth." *Id.* at 22. Green Valley also assured GVDC that it would pursue various options to provide interim service to GVDC on an "expedited basis" until a permanent wastewater facility was constructed. *Id.* In all, Green Valley estimated that, after a "fair sharing of costs and responsibilities," GVDC would need to pay roughly $3.6 million in order to receive sewer service. *See id.* at 21–22 ("This cost would contract and reserve the capacity provided in your application for service."); GVDC Resp. [#102] at 5 (alleging Green Valley "quoted GVDC a fee of $3.6 million to provide wastewater services to the GVDC property").

Instead of pursuing a service agreement with Green Valley, GVDC submitted an identical request for sewer service to the City of Cibolo, Texas (Cibolo). Green Valley Mot. Summ. J. [#100-9] at 2. Cibolo responded by offering to provide sewer service to GVDC for roughly $1.6 million under the terms of an Economic Development Agreement. Cibolo

---

[4] Green Valley received a draft permit from the Texas Commission on Environmental Quality (TCEQ) in October 2015 indicating that Green Valley's requested permit complied "with all statutory and regulatory requirements." Green Valley Mot. Summ. J. [#100-3] Ex. 1F at 16–18. Nevertheless, Green Valley did not receive the final permit until July 2018 because Cibolo and Schertz—already engaged in independent efforts to decertify portions of Green Valley's CCNs—contested Green Valley's discharge application. *See id.* [#100-1] Ex. 1 (Allen Aff.) at 5–6; GVDC Resp. [#102-1] Ex. 4 (Cibolo Preliminary Offer) at 24 ("The City has filed a request with the [PUC] for single decertification of wastewater [that includes the GVDC tract."); Green Valley Mot. Summ. J. [#100-7] Ex. 2I (Schertz Preliminary Decertification Order) at 1 (seeking to decertify land from Green Valley's CCN and then recertify the same land to Schertz).

[5] *See also* Allen Aff. at 4 ("Historically, there was no demand for wastewater service . . . [because] the CCN service area lacked the population density typically necessary for a wastewater collection system, resulting in resident preference for on-site septic instead.").

4

Preliminary Offer at 24–25. Cibolo did not specify when it would ostensibly begin providing service. *Id.*

After receiving the preliminary offer from Cibolo, GVDC withdrew its request that Green Valley provide sewer service and filed a petition with the PUC under Texas Water Code § 13.254(a-5) requesting decertification of GVDC's property from Green Valley's Sewer CCN. Green Valley Mot. Summ. J. [#100-9] at 11 (GVDC Request Withdrawal); *id.* [#100-6] Ex. 2B (GVDC Decertification Petition) at 18. Section 13.254(a-5) allows the owner of a qualifying[6] tract of land not "receiving" water or sewer service to petition the PUC for expedited release from a CCN. TEX. WATER CODE § 13.254(a-5). If the tract in question is not receiving service, the owner of the tract of land is "entitled" to be released from the CCN upon request. *Id.*

The PUC concluded that the GVDC Tract was "not receiving sewer service under [§ 13.254(a-5)]" and that Green Valley had neither "committed facilities nor lines providing sewer service" nor "performed acts or supplied anything" to the GVDC Tract. GVDC Decertification Order at 11, 13. The PUC further determined that it could not consider whether removal of the GVDC Tract from Green Valley's CCN might violate federal law because § 13.254(a-6) prohibits the PUC from denying a petition "based on the fact that a certificate holder is a borrower under a federal loan program." TEX. WATER CODE § 13.254(a-6); GVDC Decertification Order at 11; *see also* Green Valley Mot. Summ. J. [#100-7] Ex. 2G (Cibolo Preliminary Certification Order) at 2–4 (concluding PUC lacks authority to adjudicate federal preemption issues). On these bases, the PUC approved GVDC's petition and decertified the GVDC Tract from Green Valley's CCN under § 13.254(a-5). GVDC Decertification Order at 11.

---

[6] Section 13.254(a-5) imposes several conditions on release which are not relevant for the purposes of this suit. *See* TEX. WATER CODE § 13.254(a-5).

5

The practical effect of this decertification was to revoke Green Valley's exclusive right to provide sewer service to the GVDC Tract.

## IV. The Present Federal Action

In August 2017, Green Valley brought this action under 42 U.S.C. § 1983 alleging GVDC, Schertz, and the PUC violated federal law by decertifying portions of Green Valley's CCN and thereby revoking Green Valley's exclusive right to provide service to the decertified areas. Compl. [#1]. Specifically, Green Valley contends the PUC cannot decertify land from Green Valley's Sewer CCN because, under § 1926(b), the PUC may not "curtail[] or limit[]" service "provided or made available" by Green Valley under its Sewer CCN. Third Am. Compl. [#89] at 9.

On this basis, Green Valley seeks declaratory and injunctive relief to restore the decertified areas to its Sewer CCN and to protect its Sewer CCN from further encroachment. For starters, Green Valley asks the Court to declare that provisions of the Texas Water Code prohibiting the PUC from considering "the fact that a certificate holder is a borrower under a federal loan program" are preempted by § 1926(b). *Id.* at 9; TEX. WATER CODE § 13.254(a-1) ("The fact that a certificate holder is a borrower under a federal loan program is not a bar to a request under this subsection for the release of the petitioner's land and the receipt of services from an alternative provider."); *id.* § 13.254(a-6) ("The utility commission may not deny a petition received under [§ 13.254(a-5] based on the fact that a certificate holder is a borrower under a federal loan program."). Green Valley also asks the Court to enjoin the PUC from enforcing these provisions; to invalidate the GVDC and Schertz Decertification Orders; to command the PUC to reverse the GVDC and Schertz Decertification Orders; and to enjoin the PUC from further decertifying portions of Green Valley's Sewer CCN under Texas Water Code

6

§§ 13.254(a-5) and 13.255(b)-(c). Third Am. Compl. [#89] at 14–16. Finally, Green Valley requests the Court enjoin GVDC from seeking sewer service from any service provider other than Green Valley and enjoin Schertz from either providing service to areas decertified from Green Valley's Sewer CCN or seeking to decertify additional areas of Green Valley's Sewer CCN under Texas Water Code §§ 13.254(a-5) or 13.255(b)-(c). *Id.*

All parties now move for summary judgment on Green Valley's claims. Green Valley Mot. Summ. J. [#100]; Schertz Mot. Summ. J. [#106]; GVDC Mot. Summ. J. [#120]; PUC Mot. Summ. J. [#121]. These pending motions are ripe for review.

## Analysis

The Court proceeds by first laying out the applicable legal standard. It then considers (1) whether § 1926(b) preempts Texas Water Code §§ 13.254(a-1) and 13.254(a-6); (2) whether § 1926(b) bars Schertz's encroachment on the Green Valley Sewer CCN under Texas Water Code § 13.255; and (3) whether § 1926(b) bars decertification of the GVDC tract from Green Valley's Sewer CCN under Texas Water Code § 13.254(a-5).

### I. Legal Standard

#### A. Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the

court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. The court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

### A. Texas Water Code §§ 13.254(a-1) and 13.254(a-6)

Under the Supremacy Clause of the Constitution, "federal law supersedes or supplants . . . inconsistent state law or regulation." *United States v. Zadeh*, 820 F.3d 746, 751 (5th Cir. 2016). Though there are several types of preemption, only one is relevant here. Under the doctrine of conflict preemption, state law is preempted where (i) compliance with both state and federal law is impossible, or (ii) state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* "What is a sufficient obstacle [to trigger conflict preemption] is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects[.]" *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000) (citing *Savage v. Jones*, 225 U.S. 501, 533 (1912)). The party asserting federal preemption bears the burden of persuasion. *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011).

Green Valley contends Texas Water Code §§ 13.254(a-1) and 13.254(a-6) are subject to conflict preemption and "directly conflict" with 7 U.S.C. § 1926(b) because they prohibit the PUC from denying decertification requests based on a certificate holder's federal borrower status under § 1926(b). Green Valley Mot. Summ. J. [#100] at 6, 7. According to Green Valley, these provisions "declare" that state law "should supersede and preempt federal law." *Id.* at 6.

As an initial matter, Green Valley lacks standing to challenge § 13.254(a-1) because neither of the decertification orders complained of by Green Valley rely on or even cite § 13.254(a-1). *See* GVDC Decertification Order at 11 (ordering decertification in reliance on §§ 13.254(a-5) and 13.254(a-6)); Schertz Decertification Order at 21 (ordering decertification under § 13.255). Absent any connection between the complained-of decertification orders and

9

§ 13.254(a-1), Green Valley lacks standing to challenge § 13.254(a-1) because it has not suffered an injury fairly traceable to this provision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) ("[T]here must be a causal connection between the injury and the conduct complained of . . . .").

By contrast, the GVDC Decertification Order does cite and rely on § 13.254(a-6). GVDC Decertification Order at 13 ("Under [§ 13.254(a-6)], the Commission may not deny the petition based on the fact that [Green Valley] is a borrower under a federal loan program.") Thus, the remaining question is whether § 13.254(a-6) conflicts with 7 U.S.C. § 1926(b) by mandating the PUC not deny petitions under § 13.254(a-5) "based on the fact that a certificate holder is a borrower under a federal loan program."

In evaluating whether § 13.254(a-6) is subject to conflict preemption, the Court first turns to the text of § 1926(b). That provision provides only that "[t]he service provided or made available" through a utility association indebted under § 1926(b) "shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body." 7 U.S.C. § 1926(b). It does not mention or address the manner in which state governments should go about managing utility certification. *Id.* Nor does it command that state administrative agencies—which are often ill-equipped to decide complex legal issues such as preemption—must take into account federal indebtedness when certifying and decertifying land from utility districts. *Id.*

This textual inquiry makes clear that it is not impossible to comply with both § 1926(b) and § 13.254(a-6) because the provisions do not directly conflict. For example, the PUC might ignore a certificate holder's federal indebtedness under § 1926(b) but nevertheless deny a request

for decertification, thereby complying with both state law (by ignoring the federal loan) and federal law (by declining to curtail or limit the borrower's service area).[8]

Still, § 13.254(a-6) might be subject to conflict preemption if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting § 1926(b). *Zadeh*, 820 F.3d at 751. Relevant here, Congress enacted § 1926(b) with the goal of "safeguard[ing] the viability and financial security" of federally indebted utility associations "by protecting them from the expansion of nearby cities and towns. *Green Valley Special Util. Dist. v. City of Cibolo, Tex.*, 866 F.3d 339, 343 (5th Cir. 2017).

Section 13.254(a-6) creates a two-step process for reviewing decertification requests: certification questions are initially addressed by the PUC, while preemption issues and questions of federal law are addressed by the state district court upon appeal.[9] In similar fashion, federal administrative agencies are often tasked with leveraging agency expertise to interpret particular statutes, while nevertheless remaining unfit to adjudicate adjacent statutory or constitutional issues. *See, e.g., Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 213–15 (1994) (noting adjudication of constitutional issues "has generally been thought beyond the jurisdiction of administrative agencies"); *Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*, 379 U.S. 411 (1965) (observing Congress often "provide[s] statutory review procedures designed to permit agency expertise to be brought to bear on particular problems"); *see also Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 22–24 (2000) (upholding statutory provision requiring certain actions be "channeled" through administrative agency on

---

[8] *Cf. Wyeth v. Levine*, 555 U.S. 555, 589–90 (2009) (Thomas, J., concurring) ("The Court has generally articulated a very narrow 'impossibility standard' . . . .").

[9] Indeed, the PUC has previously suggested it is institutionally incompetent to consider or apply *any* federal law, irrespective of § 13.254(a-6). *See* Green Valley Mot. Summ. J. [#100-7] Ex. 2G at 3–4 (concluding the state legislature has not given the PUC authority to adjudicate federal preemption questions).

11

the ground that courts retained "adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide"). Texas has likewise seen fit to allocate and distribute decision-making authority among multiple state adjudicators. Though in theory a state might assemble a multi-step review process so elaborate and labyrinthine as to create a substantial obstacle to the ability of federal borrowers to protect their certificated area, this is not such a case,[10] and in light of the principles of federalism undergirding our constitutional system, this Court declines to dictate the manner in which Texas may structure administrative review of state utility certifications.

In sum, the Court concludes § 13.254(a-6) is not subject to conflict preemption because it neither directly conflicts with § 1926(b) nor poses an obstacle to the goals and purpose of Congress in enacting § 1926(b). The Court thus denies Green Valley's motion for summary judgment on its preemption claims relating to § 13.254(a-6) and grants summary judgment to the PUC as to the same.

### B. Decertification of the Schertz Acreage Under Texas Water Code § 13.255

Green Valley argues § 1926(b) bars decertification of the Schertz Acreage under Texas Water Code § 13.255. Green Valley Mot. Summ. J. [#100] at 10–12. Under § 1926(b), the service area of utility association may not be curtailed or limited so long as (1) the association has an outstanding loan under § 1926; and (2) the association has "made available" service. *N. Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 915 (5th Cir. 1996) (per curiam); *see also Green Valley Special Util. Dist. v. City of Cibolo, Tex.*, 866 F.3d 339, 341 (5th Cir. 2017).

---

[10] *Cf. Shalala*, 529 U.S. at 23 (finding two-step review process requiring plaintiffs to appeal statutory and constitutional questions unaddressed by initial agency review to present nothing more than "potentially isolated instances of the inconveniences sometimes associated with the postponement of judicial review").

12

Schertz and Green Valley dispute the circumstances under which an association makes service available under § 1926(b). Green Valley argues, in reliance on *North Alamo* and *Cibolo*, that its state law duty to provide "continuous and adequate service" to its certificated area under Texas Water Code § 13.250(a) is tantamount to making service available under § 1926(b). *See* Green Valley Mot. Summ. J. [#100] at 11–12; *N. Alamo*, 90 F.3d at 915–16 ("We hold that the Utility's state law duty to provide service is the legal equivalent to the Utility's 'making service available' under § 1926(b)."); *Cibolo*, 866 F.3d at 341 ("Where a CCN imposes a duty on a utility to provide a service, that utility has 'provided or made available' that service under § 1926(b) . . . ."). In turn, Schertz argues that *North Alamo* created a "two-prong test" for assessing whether utilities have made service available under § 1926(b). According to Schertz, this test requires a utility seeking refuge under § 1926(b) to demonstrate (a) that the utility has incurred a legal duty to provide service; and (b) that the utility is capable, as a factual matter, of providing service to those who request it. Schertz Mot. Summ. J. [#106] at 7–8; *see also* PUC Resp. [#103] at 3–4 ("*North Alamo* rests on two prongs.").

In *North Alamo*, the lower court had held the utility had "made service available" under § 1926(b) as a matter of law by incurring a state law duty to provide continuous and adequate service to its certificated area. *N. Alamo*, 90 F.3d at 914. The lower court had also held, in the alternative, that the utility had made service available as a factual matter because it had sufficient infrastructure to provide service and had not refused any requests for service within its certificated area. *Id.* at 916. On appeal, the Fifth Circuit explicitly held "that the Utility's state law duty to provide service is the legal equivalent" of making service available under § 1926(b). *Id.* It then affirmed "on the strength of [the lower court's] alternative legal and factual determinations." *Id.*

At no point did the Fifth Circuit suggest in *North Alamo* that it was fusing the lower court's alternative holdings into some sort of misbegotten legal chimera. *See id.* To the contrary, the Fifth Circuit subsequently reiterated in *Cibolo* that so long as a utility's state law duty to provide service remains intact, that utility has provided and made available service under § 1926(b). *See Cibolo*, 866 F.3d at 341 (making no mention of *North Alamo*'s alternative factual holding nor of a second, factual prong). Though neither *North Alamo* nor *Cibolo* are binding precedent on this point—the former was issued per curiam and the latter's relevant pronouncements are dicta—both opinions are persuasive.

Given this persuasive authority, the Court again concludes, as it did in the context of Defendants' prior motions to dismiss, that a utility provides or makes available service under § 1926(b) so long as its state law duty to provide service remains intact. *See* Order of Feb. 9, 2018 [#71] at 17. Concomitantly, of course, to the extent a utility does not fulfill its state law duty to provide continuous and adequate service under § 13.250(a), that utility has not provided or made available service under § 1926(b) and is not entitled to federal protection of its service area. In such circumstances, the PUC may "revoke or amend" the utility's CCN on the ground the utility "has failed to provide continuous and adequate service in the area, or part of the area, covered by the certificate." TEX. WATER CODE § 13.250(a)(1); *see also id.* § 13.250(a-1)(3) (authorizing decertification where utility has failed to provide service or is incapable of providing service on a continuous and adequate basis "in the manner reasonably needed or requested by current and projected service demands in the area").

Here, the PUC did not determine that Green Valley had failed to fulfill its state law duty to provide continuous and adequate service to Schertz.[11] Rather, the PUC determined that it was

---

[11] Schertz concedes the PUC is the proper arbiter of whether or not Green Valley has met its state law duty to provide continuous and adequate service. Schertz Mot. Summ. J. [#106] at 10.

14

required to grant Schertz's request for decertification regardless of whether Green Valley had fulfilled its state law duty or not. Schertz Decertification Order at 37. Because the PUC did not determine that Green Valley had failed to uphold its state law duty to provide service under § 13.250, Green Valley's state law duty remains intact. And as long as Green Valley's state law duty remains intact, Green Valley is providing and making available service within the meaning of § 1926(b). *See Cibolo*, 866 F.3d at 341; *N. Alamo*, 90 F.3d at 916. Under § 1926(b), such service may not be curtailed or limited by inclusion of the area served within the boundaries of any municipal corporation—in this case, Schertz. The Court therefore grants Green Valley's motion for summary judgment on its § 1983 claim alleging GVDC and the PUC interfered with Green Valley's exclusive right to provide service to the GVDC Tract under § 1926(b).

C. **Decertification of the GVDC Tract Under Texas Water Code § 13.254(a-5)**

Green Valley also argues § 1926(b) bars decertification of the GVDC Tract. Green Valley Mot. Summ. J. [#100] at 10–12. And again, the parties' dispute centers on whether Green Valley made service available to the GVDC Tract under § 1926(b).

As the Court explained above in the context of the Schertz Decertification Order, a utility makes service available under § 1926(b) by incurring and upholding a state law duty to provide such service. *See supra* Section II.B. Green Valley argues it has incurred a state law duty under Texas Water Code § 13.250 to provide "continuous and adequate service" within its service area. Green Valley Mot. Summ. J. [#100] at 3. Further, Green Valley contends the GVDC Tract cannot be decertified from Green Valley's service area unless the PUC determines Green Valley has failed to fulfill its state law duty to provide continuous and adequate service. *Id.* at 12. In turn, GVDC argues that when the PUC found the GVDC Tract was not "receiving" service, it also implicitly concluded Green Valley had breached its state law duty to provide service.

15

GVDC Mot. Summ. J. [#120] at 5–7. Alternatively, GVDC argues the PUC's findings and Green Valley's discovery responses in this case demonstrate that Green Valley has not met its state law duty to provide continuous and adequate service under § 13.250. *Id.* at 7–8.

The first question is whether the PUC implicitly concluded Green Valley had breached its state law duty to provide service to the GVDC Tract. It is undisputed that the PUC did not *explicitly* conclude Green Valley breached its state law duty to provide continuous and adequate service. The PUC did find, however, that the GVDC Tract was not "receiving service" as that term is used in Texas Water Code § 13.254(a-5). GVDC Decertification Order at 12–13. The Texas Water Code defines "service" as "any act performed, anything furnished or supplied, and any facilities or lines committed or used by a retail public utility in the performance of its duties . . . ." TEX. WATER CODE § 13.002(21). Although Green Valley had purchased 65 acres of land for construction of a permanent wastewater facility and applied for a discharge permit, the PUC concluded the GVDC Tract was not "receiving service" because Green Valley had neither "performed acts or supplied anything" to the GVDC Tract nor committed facilities or lines to providing service to the GVDC Tract. GVDC Decertification Order at 12–13.

Of course, the immediate reason Green Valley did not perform any acts or supply anything to the GVDC Tract is that GVDC withdrew its request for service from Green Valley. On July 29, 2015, GVDC informed Green Valley that it had sixty days to produce "a definitive commitment and agreement" regarding the provision of wastewater service. GVDC Commitment Demand at 19–20. When Green Valley proved unable to produce such an agreement—presumably because GVDC was unwilling to agree to pay $3.6 million for sewer service—GVDC withdrew its request for service and pursued a nearly identical request for service with Cibolo in hopes of receiving cheaper sewer service. Green Valley Mot. Summ. J. [#100-9] at 2;

16

GVDC Request Withdrawal; GVDC Resp. [#102-1] Ex. 4 (Cibolo Offer) at 24–25 (suggesting GVDC and Cibolo pursue an "economic development agreement" whereby Cibolo would provide a wastewater line to the GVDC Tract for an initial outlay of $1.3 million).

This context makes clear that a failure to receive service does not necessarily entail a breach in a utility's duty to provide service. Green Valley avers that it stood ready to accommodate GVDC's wastewater needs as they arose, both an on expedited basis and through construction of a permanent wastewater treatment facility. Green Valley Commitment at 21–23. During the time GVDC's request for service was outstanding, the GVDC Tract did not receive service because GVDC had not agreed to pay for it. It is difficult to contemplate how, in these circumstances, GVDC's refusal to accept service might constitute a per se breach of Green Valley's duty to provide continuous and adequate service to consumers.

Even more to the point, it is immaterial whether the PUC's findings might support the conclusion that Green Valley did not meet its state law duty to provide service to the GVDC Tract, because the PUC did not reach that conclusion here. As explained above, *North Alamo* and *Cibolo* both suggest that a utility makes service available under § 1926(b) so long as its state law duty to provide service remains intact. *See supra* Section II.B. In this instance, the PUC did not address whether Green Valley violated this duty, and as a result, Green Valley's state law duty remains inviolate. *See* GVDC Decertification Order at 12–13. Until the PUC determines Green Valley has breached its state law duty to provide service, the existence of that duty means Green Valley is making service available to the GVDC Tract under § 1926(b). *See supra* Section II.B.

GVDC argues that even if the PUC did not conclude Green Valley breached its state law duty, the PUC's findings and Green Valley's discovery responses in this case demonstrate that Green Valley has not provided continuous and adequate service to the GVDC Tract. GVDC Mot.

17

Summ. J. [#120] at 7–8. According to GVDC, it is irrelevant whether the PUC actually determined a breach of duty has occurred, because this Court can step into the shoes of the PUC and determine that Green Valley has not met its state law duty.

It is not this Court's place to substitute its judgment on state law matters for that of the PUC. This case is not an appeal from the GVDC Decertification Order. Rather, it is a federal action brought under § 1983 to halt Defendants' interference with a federal right created by § 1926(b). Thus, while this Court might plausibly award equitable relief on the ground the GVDC Decertification Order interferes with a federal right, it lacks authority to adjudicate under state law the question of whether or not Green Valley has upheld its state law duty to provide service. Further, it is immaterial whether the facts are such that the PUC *might* have concluded Green Valley did not uphold its duty to provide service because in this instance, the PUC did not do so. As the GVDC Decertification Order did not consider whether Green Valley had upheld its duty to provide service, that duty remains intact and Green Valley is making service available under § 1926(b). *See Cibolo*, 866 F.3d at 341.

This holding leaves GVDC with several avenues of recourse through which the GVDC Tract might be released from Green Valley's Sewer CCN. Most obviously, the PUC might revoke or amend the Sewer CCN on the ground Green Valley has violated its state law duty to provide service because it has "never provided, is no longer providing, is incapable of providing, or has failed to provide continuous and adequate service" to consumers within its Sewer CCN. Tex. Water Code § 13.254(a)(1). Of course, the PUC did not make such a finding here. Under a similar statutory provision, the GVDC may petition the PUC for expedited release of the GVDC Tract from Green Valley's Sewer CCN upon a showing that Green Valley has either refused to provide or is incapable of providing service on a continuous and adequate basis as "reasonably

needed or requested by current and projected service demands in the area." *Id.* § 13.254(a-1)(3). GVDC did not seek release under this provision, either.

Instead, GVDC sought decertification under Texas Water Code § 13.254(a-5), and the resulting PUC order decertifying the GVDC Tract under § 13.254(a-5) did not consider whether or not Green Valley had fulfilled its state law duty to provide service. In this context, Green Valley's state law duty to provide service remains intact, and thus, Green Valley is making service available under § 1926(b). Such service may not be curtailed or limited by decertifying the GVDC Tract and then recertifying it to Cibolo. For this reason, the Court grants Green Valley's motion for summary judgment on its § 1983 claim alleging Schertz and the PUC interfered with Green Valley's exclusive right to provide service to the Schertz Acreage under § 1926(b).

## Conclusion

The Court dismisses Green Valley's claim that § 1926(b) preempts Texas Water Code § 13.254(a-1) and grants summary judgment in favor of Defendants on Green Valley's claim that § 1926(b) preempts Texas Water Code § 13.254(a-6). Additionally, the Court grants summary judgment in favor of Green Valley on Green Valley's § 1983 claims and concludes the decertification of the GVDC Tract and Schertz Acreage violated Green Valley's exclusive right to provide service under § 1926(b).

Accordingly,

IT IS ORDERED that Green Valley's Motion for Summary Judgment [#100] is GRANTED IN PART and DENIED IN PART as described in this opinion;

IT IS FURTHER ORDERED that Schertz's Motion for Summary Judgment [#106] is DENIED as described in this opinion;

19

IT IS FURTHER ORDERED that GVDC's Motion for Summary Judgment [#120] is DENIED as described in this opinion;

IT IS FINALLY ORDERED that the PUC's Motion for Summary Judgment [#121] is GRANTED IN PART and DENIED IN PART as described in this opinion.

SIGNED this the 28th day of November 2018.

/s/ Sam Sparks
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE